UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JEFFERY K. PERDUE,                          )
                                            )
                    Plaintiff,              )
                                            )
        v.                                  )       No. 2:24-cv-00165-JPH-MG
                                            )
ROBERT E. CARTER, JR., et al.,              )
                                            )
                    Defendants.             )

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jeffery Perdue alleges that Defendants left him for days in a cell covered in human waste and ignored his requests for basic hygiene items and linens for nearly two weeks while he was incarcerated at the Pendleton Correctional Facility ("Pendleton"). Dkt. 2. He proceeds on Eighth Amendment and state law claims. Dkt. 9 at 6. Defendants moved for summary judgment. Dkt. 49. Mr. Perdue has moved for leave to file a notice of statement of material facts in dispute. Dkt. 55. Mr. Perdue's motion, dkt. [55], is **GRANTED.** For the reasons that follow, Defendants' motion for summary judgment, dkt. [49], is **GRANTED in part and DENIED in part.**

**I.
Claims Before This Court**

As an initial matter, Defendants argue that they are entitled to summary judgment because Mr. Perdue's claims are barred by the doctrine of collateral estoppel. Dkt. 50 at 7-8; *see In re Calvert*, 913 F.3d 697, 701 (7th Cir. 2019) (describing the elements of collateral estoppel).

1

Mr. Perdue concedes in his response in opposition to summary judgment that summary judgment should be "granted as to defendants Michael Pfleeger, James Boldman,[1] Robert E. Carter, Jr., Dennis Reagle, Dennis Davis, Chance Bishop, and Christina Conyers," dkt. 54 at 2, and does not address those claims further, dkt. 54 at 11–16. Mr. Perdue has therefore "abandoned the claim[s]" against those Defendants and may no longer pursue them. *Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008); *accord Crothersville Lighthouse Tabernacle Church, Inc. v. Church Mut. Ins. Co.*, 168 F.4th 483, 489 (7th Cir. 2026) ("In the civil context, waiver is . . . the end of the line.").

Officers Alexander Koenig and Eric Salinas were not defendants in the state court action and therefore did not move for summary judgment in that case, dkt. 49-16; dkt. 49-17, so Mr. Perdue does not concede that they should be granted summary judgment in this case, *see* dkt. 54 at 2. The deliberate indifference claims against Officers Koenig and Salinas, and a negligence claim against Officer Salinas, therefore proceed in this action. Dkt. 9 at 6.[2]

---

[1] The complaint and screening order refer to this defendant as "Bowman," but the parties have clarified that his name is James Boldman. *See* dkt. 54 at 2.

[2] Officers Koenig and Salinas also argue that they are entitled to summary judgment based on collateral estoppel. Dkt. 50 at 7-8. They cite a Seventh Circuit case applying Illinois law, which requires in part that "the party against whom the estoppel is asserted must have been a party to, or must be in privity with a party to, the prior adjudication." *Sapp v. Fox*, 106 F.4th 660, 665 (7th Cir. 2024). But, as explained above, Officers Koenig and Salinas were not defendants in the state court action. Dkt. 49-17; dkt. 49-18. Moreover, they have not cited any authority regarding collateral estoppel under Indiana law or discussed whether any issues specific to them in this case have been addressed in the state court case. Officers Koenig and Salinas therefore are not entitled to summary judgment on this basis.

## II.
## Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered

undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

### III.
### Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Perdue and draws all reasonable inferences his favor. *Khungar,* 985 F.3d at 572–73.

#### A. The parties

Plaintiff Jeffrey Perdue is an inmate within the IDOC who was housed at Pendleton in G cell house in Cell 6, 6-D range, during the events that gave rise to this action. Dkt. 2 at 7.

Defendants Alexander Koenig and Eric Salinas were officers who escorted Mr. Perdue to the feces-covered cell 6, 6-D range, on June 30, 2022. *Id.* at 5, 8.

#### B. June 30, 2022, incident with Officers Salinas and Koenig

June 30, 2022 was one of the hottest days of the year. Dkt. 49-10 at 16-17. On that day, Mr. Perdue was escorted to the restrictive housing unit and put in a holding cage where Officer Salinas stripped him down to his boxers and his shoes. *Id.* at 8-9. Officer Salinas called for Officer Koenig to come help him escort Mr. Perdue to his cell. *Id.* at 9.

The officers escorted Mr. Perdue to the third floor, where Officer Koenig stayed at the front of the range to open the cell door while Officer Salinas escorted him, shackled and cuffed, down to cell 6 on 6D. *Id.* at 9. When the cell

door opened, Mr. Perdue took one step into the dark cell and nearly vomited because of how bad it smelled. *Id.* Mr. Perdue took a step back, and Officer Salinas asked, "What's wrong?" *Id.* Mr. Perdue said, "It smells real bad in there, man." *Id.*

Officer Salinas peeked his head in the cell and turned the light on. *Id.* As soon as the light came on, Officer Salinas and Mr. Perdue both saw that almost the entire floor was covered in a huge dry puddle of human waste, toilet paper, and dry chunks of fecal matter. *Id.* at 9-10. The human feces continued up the back of the wall about 2 feet near the toilet. *Id.* at 10.

Then Officer Koenig ran down to the cell and asked Officer Salinas, "what are you doing in there?" *Id.* Officer Salinas said, "Man, look at this. We can't leave him in there." *Id.* Mr. Perdue immediately turned to Officer Koenig and said, "Man, please don't leave me in here. Please call for biohazard to come clean the cell." *Id.* Officer Koenig looked at the cell and said "I know it's been dry for a while, so it's safe for you to clean it. You can clean it yourself." *Id.* Mr. Perdue said "There's no way I can clean this. I don't have anything." *Id.* Mr. Perdue told Officer Koenig that it is against his rights to clean it; it's inhumane—it's another human's waste. *Id.* at 11. Mr. Perdue also told Officer Koenig that it would be bad for his health, and he would be scared for his life in the cell. *Id.*

Mr. Perdue begged Officer Koenig to not leave him in there and to call biohazard. *Id.* But Officer Koenig said that Mr. Perdue "can either stay in there or [he] can get what happens." *Id.* at 11-12. Mr. Perdue explained that "what

happens" at Pendleton is that, when an inmate refuses to go into a cell to lock up, he will get maced and tasered. *Id.* at 12. Because Officer Koenig said that, Mr. Perdue was in fear of being harmed by the two officers telling him to clean the cell himself. *Id.*

Then, Officer Koenig said, "well, we'll put some chemicals on it and we'll give you a scrub brush" because "that's all [he's] allowed to give [Mr. Perdue]." *Id.* Mr. Perdue then asked for a mop, towels, gloves to protect himself, and personal protective equipment. *Id.* But Officer Koenig said he could not give him those things. *Id.*

Officers Salinas and Koenig then escorted Mr. Perdue back down to a shower holding cell while they gathered cleaning supplies—three or four full bottles of green germicide, one bottle of red Neutral Floor, a handheld scrub brush, a green scratch pad scrubber, and a stack of 40-50 paper towels. *Id.* at 12-13. Mr. Perdue had sought to have his cell cleaned by the biohazard team at Pendleton, who would clean the cell with face shields, masks, ventilators, goggles, latex gloves, yellow suits, and a backpack pressure washer with a ShopVac to clean it up. *Id.* at 11. The biohazard team ultimately came to clean his cell eight days later. *Id.* at 11.

After about an hour of gathering supplies, the officers escorted Mr. Perdue back to the feces-covered cell and dumped the chemicals all over the floor. *Id.* at 13-14. They left the scrub brush and paper towels for Mr. Perdue to use to clean the cell, but all they did was smear the feces everywhere. *Id.* at 14. The cell had no hot water and the cold water barely trickled out. *Id.* Mr. Perdue

6

had to use the hard end of the scrub brush, opposite the bristles, to scrape chunks off of the floor while on his hands and knees, still wearing only his boxers. *Id.* 14-15.

The cell also contained a soiled mattress that was "brown and disgusting." *Id.* at 14. The sheet and blanket were also soiled, but the top 25% of the blanket looked "halfway decent" so Mr. Perdue ripped it off and set it to the side. *Id.* at 15. Because he did not have a towel or mop, he used the blanket to push the liquid mix of feces and chemicals out of his cell and into the range. *Id.*

While Mr. Perdue was cleaning on his hands and knees, the chemicals flicked up into his face and got into his right eye on two occasions. *Id.* at 16. His eye burned very badly, and he was covered in sweat with chemicals on his hands, and didn't know what to do. *Id.* He begged the officers to get him out of there and to put him in a different cell, but they said they were not allowed to. *Id.* Mr. Perdue asked Officer Koenig, among others, to let him take a shower and wash off. *Id.* Mr. Perdue was told that he would get a shower during his range's next shower day, which would have been Saturday, and this all occurred on a Thursday. *Id.* at 17.

### C. Mr. Perdue's Injuries

Mr. Perdue had symptoms immediately after the chemicals splashed into his right eye when he cleaned his cell on his hands and knees. Dkt. 56-10 at 45. Nonparty Dr. Lewton diagnosed Mr. Perdue with cataracts in his right eye, stating that it was the result of an injury to his right eye. *Id.* Mr. Perdue sees

7

Dr. Lewton every six months and still experiences pressure in his right eye. His eyesight in his right eye is completely blurred. *Id.* at 45-46.

Mr. Perdue experienced ongoing abdominal pains and vomiting while housed in the feces-covered cell. *Id.* at 47-49. He also developed rashes on his elbows and his knees. *Id.* at 49-50. Mr. Perdue stated that he could not help but scratch these red patches because they were so itchy. *Id.* Mr. Perdue suspects that the rashes were due to the chemicals and stated that they lasted about a week. *Id.* at 50-51.

### IV.
### Discussion

### A. Conditions of Confinement and Qualified Immunity

Mr. Perdue proceeds on conditions of confinement claims against Officers Koenig and Salinas. Dkt. 9 at 6. Officers Koenig and Salinas argue on summary judgment that Mr. Perdue cannot establish the subjective component of such a claim, dkt. 50 at 11, and that in the alternative, they are entitled to qualified immunity. *Id.* at 17.

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up). Under

the subjective component, a prisoner must establish that the defendants had a culpable state of mind—that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "To overcome the defendant's invocation of qualified immunity, [a plaintiff] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013).

Officers Koenig and Salinas do not dispute that being transferred to a cell covered in human feces satisfies the objective element. Dkt. 50 at 9. But they argue that they "did not have the requisite knowledge to be indifferent." *Id.* at 10. Officers Koenig and Salinas cite to Mr. Perdue's deposition testimony, dkt. 49-10 at 22-23, that Officer Koenig stated: "I know it's been dry for a while, so it's safe for you to clean it. You can clean it yourself." Dkt. 50 at 10. Officers

Koenig and Salinas further argue that they "reasonably believed that any dried feces posed no imminent threat or existential threat to the Plaintiff and they thought it was safe for him to clean it himself." *Id.* at 11-12. But other than Officer Koenig's statement that the feces had "been dry for a while," this assertion is not supported by any citation to the record. *See id.*

The designated evidence is that Mr. Perdue begged the officers not to place him in the cell and begged for biohazard to clean up the mess. Dkt. 49-10 at 9-12. Officers Salinas and Koenig were aware of the feces covered cell yet did not call biohazard to clean up the dried feces or otherwise transfer Mr. Perdue to another cell. *Id.* In fact, Mr. Perdue testified that Officer Salinas stepped into the cell with him, turned the light on, and then told Officer Koenig that "[w]e can't leave him in here." *Id.* at 10. The record also shows that Mr. Perdue begged to shower after he scrubbed his cell on his hands and knees, and was told he had to wait several days until his range had their set shower time. *Id.*

A reasonable jury could therefore find that Officers Salinas and Koenig "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720.

The Court therefore addresses the second prong of the qualified immunity analysis: whether that right was clearly established. *Pearson*, 555 U.S. at 232. This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 646 (1987)). To be "clearly established," a

constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 583 U.S. at 64 (quoting *Anderson*, 483 U.S. at 641). Although "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015).

"The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). Qualified immunity thus "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

After Officers Salinas and Koenig raised qualified immunity, dkt. 50 at 17-18, Mr. Perdue identified cases showing that he had a clearly established

11

right to be free from inhumane conditions caused by severe exposure to human waste, dkt. 54 at 8 (citing *Taylor v. Riojas*, 592 U.S. 7, 9 (2020) (reversing grant of qualified immunity in case involving inmate left in a cell "teeming with human waste" for 6 days). Mr. Perdue also cited several Seventh Circuit cases which would put Defendants on notice that allowing a prisoner to be held in a cell severely contaminated with human feces violated the Constitution. *E.g. Isby v. Clark*, 100 F.3d 502, 506 (7th Cir. 1996); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989).

Defendants are not entitled to summary judgment based on qualified immunity, and those claims must be resolved at trial.

### B. State Law Negligence

Mr. Perdue also brings a state law negligence claim against Officer Salinas. Dkt. 9 at 6. To prevail on a common law negligence claim under Indiana law, a plaintiff must prove: (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; and (3) the breach proximately caused an injury to the plaintiff. *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011).

Officer Salinas argues that he is entitled to summary judgment because he "did not act with negligence to the Plaintiff's alleged injuries." Dkt. 50 at 15. But Officer Salinas does not include any briefing, factual analysis, or legal precedent to support why he was not negligent. *See* dkt. 50 at 15-17. Any argument for summary judgment on the negligence claim is therefore waived. *Schaefer v. Universal Scaffolding & Equip., LLC*, 830 F.3d 599, 607 (7th Cir.

2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Officer Salinas also argues that he is entitled to qualified immunity on the negligence claim against him. Dkt. 50 at 17-18. But a federal qualified immunity defense does not extend to Mr. Perdue's Indiana-law negligence claim brought under this Court's supplemental jurisdiction. *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997). Moreover, Officer Salinas's argument is that the State does not consent to suit in federal court pursuant to the Eleventh Amendment. *Id.* at 18; *see also* dkt. 58 at 2. Eleventh Amendment immunity, however, is not the same as qualified immunity. *Compare Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) ("the principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III") *with Mullenix*, 577 U.S. at 11 ("[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"). Since Officer Salinas is sued in his personal capacity, an award of damages could be executed only against the official's personal assets, and Eleventh Amendment sovereign immunity does not apply. *Lewis v. Clarke*, 581 U.S. 155, 163 (2017) ("[S]overeign immunity does not erect a barrier against suits to impose individual and personal liability.").

Officer Salinas is not entitled to summary judgment on the negligence claim against him.

**V.**
**Conclusion**

The **clerk is directed** to change the name on the docket of defendant "James Bowman" to "James Boldman."

Mr. Perdue's motion for leave to file a notice of statement of material facts in dispute, dkt. [55], is **GRANTED**. Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**. Dkt. [49]. The claims against Defendants Michael Pfleeger, James Boldman, Robert E. Carter, Jr., Dennis Reagle, Dennis Davis, Chance Bishop, and Christina Conyers are abandoned and therefore **dismissed with prejudice**. The **clerk is directed** to terminate these parties as defendants on the docket.

The following claims must be resolved by settlement or trial: (1) Eighth Amendment conditions of confinement claims against Officer Koenig and Officer Salinas; (2) a state law negligence claim against Officer Salinas.

The magistrate judge is asked to hold a status conference to discuss the scheduling of a settlement conference and trial readiness.

**SO ORDERED.**

Date: 7/23/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JEFFERY K. PERDUE
978217
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel

14